UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | Case No. 15-CR-00285-LHK |
|---|---|
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ANTONIO CRUZ'S MOTION TO SUPPRESS** |
| v. | |
| DANIEL CHAVEZ, et al., | Re: Dkt. No. 350 |
| Defendants. | |

On May 23, 2018, Defendant Antonio Cruz ("Cruz") filed a Motion to Suppress June 7, 2012 Warrantless Vehicle Search and Statements to Police. ECF No. 350 ("Mot."). The government filed a timely opposition on June 6, 2018. ECF No. 361 ("Opp."). Cruz did not file a reply. Having considered the submissions of the parties, the record in this case, and the relevant law, the Court GRANTS in part and DENIES in part Cruz's motion to suppress.

## I. BACKGROUND

This matter arises from a traffic stop that occurred on June 7, 2012 at approximately 5:45 p.m. in Salinas, California. Earlier that same day, around 4:04 p.m., Salinas Police Officers Carlo Calupad and Mario Reyes arrested Joao Rodriguez ("Rodriguez") for possession of marijuana for

sales. Opp., Ex. A at 2. The police then set up surveillance of Rodriguez's residence to prevent associates from removing evidence before a search warrant could be obtained. *Id.* The police knew that Defendant Cruz, Rodriguez's cousin, lived in the same residence and associated with members of the Northern California Norteño gang. *Id.*

Officer Juan Cruz-Gonzalez drove to Rodriguez's house in an unmarked police vehicle soon after 4:10 p.m. to conduct surveillance. *Id.* at 20. At approximately 5:25 p.m., Officer Cruz-Gonzalez saw Cruz park in the residence's driveway in a black Toyota Camry. *Id.* Officer Cruz-Gonzalez's report states that after Cruz exited the vehicle, he looked both directions and hurried inside the house. *Id.* Almost twenty minutes later, at approximately 5:43 p.m., Cruz reemerged from the house carrying a black backpack over his shoulder. *Id.* at 21. Cruz placed the backpack in the trunk of the Camry and removed a black box from the trunk. *Id.* According to Officer Cruz-Gonzalez, Cruz then entered the driver's side of the Camry, appeared to place the black box on the front passenger seat or in the passenger compartment, and drove away from Rodriguez's house. *Id.* At that point, Officer Cruz-Gonzalez alerted units in the area about what he had witnessed and relayed the make, model, and license plate of Cruz's car. *Id.*

Officers Calupad and Reyes were in a fully marked police cruiser sitting nearby. They caught up with Cruz near the intersection of Cleveland and Van Buren Avenues at approximately 5:45 p.m. *Id.* at 2. Cruz was heading westbound on Cleveland Avenue toward a posted stop sign at Van Buren Avenue. *Id.* at 2–3. Officer Calupad reports that he observed Cruz pull three feet beyond the white painted limit line before coming to a complete stop. *Id.* at 3. Cruz thus blocked cross-traffic on Van Buren Avenue. *Id.* at 3. Shortly thereafter, Officer Calupad turned on the police siren and emergency lights to initiate a traffic stop based on Cruz's failure to stop at a posted stop sign. *Id.*

After Cruz pulled over, the officers immediately ordered him out of the car. *Id.* Cruz's declaration provides that the officers yelled at him to turn off his ignition, throw his keys out of the car, exit the vehicle with his hands raised, and back up toward the officers. ECF No. 350-2

2

Case No. 15-CR-00285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ANTONIO CRUZ'S MOTION TO SUPPRESS

("Cruz Decl.") ¶¶ 13–14. Once Cruz reached the officers with his back toward them, the officers handcuffed Cruz and put him in the back of their police car. *Id.* ¶ 14.

At some point during this series of events, Officers Gabriel Gonzalez and Gerry Magana arrived on the scene to assist with the traffic stop. Opp., Ex. A at 25. With Cruz detained in the back of the police car, Officers Calupad and Gonzalez approached Cruz's vehicle to ensure there were no other occupants. *Id.* at 3, 25. Standing near the vehicle, Officer Calupad noticed a strong smell of marijuana emanating from the passenger compartment. *Id.* at 3. Officer Calupad returned to the police car and "recontacted Cruz." *Id.* Neither Officer Calupad nor any other officer ever advised Cruz of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Cruz Decl. ¶ 16. Cruz asked Officer Calupad why he had been stopped, and Officer Calupad responded that Cruz had failed to stop at the limit line on Cleveland Avenue. Opp., Ex. A at 3. Officer Calupad then "explained to Cruz that there was a strong odor of marijuana coming from the passenger compartment of [Cruz's] vehicle" and asked whether "[Cruz] had anything illegal or marijuana in the vehicle." *Id.* Cruz replied that he had marijuana in the front passenger seat. *Id.*

The officers then conducted a full search of Cruz's vehicle. *Id.* Officer Gonzalez conducted the search of the trunk and its contents. *Id.* at 25. The trunk contained the black backpack that Officer Cruz-Gonzalez had seen Cruz place inside. *Id.* Officer Gonzalez removed the backpack from the trunk and conducted a thorough search of the three zippered compartments. *Id.* at 25–26. Officers seized a loaded .45 caliber Glock handgun, a loaded .45 caliber semi-automatic Colt pistol, a spare magazine loaded with eight rounds of .45 caliber ammunition, additional rounds of .40 and .45 caliber ammunition, a plastic bag containing approximately 256.6 grams of cocaine, plastic containers and bags collectively containing approximately 841.9 grams of marijuana, a digital scale, and over $3,670 in cash. *Id.* at 21–23, 26. Meanwhile, Officers Reyes and Magana searched the front passenger compartment of Cruz's vehicle. *Id.* at 26. In the passenger compartment, Officer Reyes located the small black box, which held 2.4 grams of concentrated cannabis. *Id.* at 22, 26.

3

Case No. 15-CR-00285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ANTONIO CRUZ'S MOTION TO SUPPRESS

United States District Court
Northern District of California

1    Cruz now moves to suppress all evidence seized and statements made during the stop and
2 search of his vehicle. *See* Mot. The government opposes suppression. *See* Opp.

## II. DISCUSSION

Cruz moves to suppress the evidence found in his vehicle and his statement made to the police during the traffic stop. *See* Mot. at 10. First, Cruz argues that the officers did not have reasonable suspicion to justify the traffic stop. *Id.* at 3–5. Second, he contends that the officers did not have probable cause to conduct a search of the entire vehicle or the trunk (and the backpack contained therein). *Id.* at 6–10. Third, Cruz moves to suppress his statement about marijuana because his statement was made to the officers without the advisement of rights set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id.* at 5–6.

The government counters each of these arguments and offers one additional argument. Specifically, the government asserts that Cruz is barred from bringing this motion to suppress by a prior guilty plea. Opp. at 10–11.

The Court addresses each argument in turn.

### A.  Stop of Cruz's Car

Cruz first moves to suppress the entirety of the evidence obtained during the traffic stop on the ground that the officers did not have a sufficient justification under the Fourth Amendment to effectuate a stop. The Fourth Amendment broadly protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." The level of justification required to render a seizure constitutionally reasonable depends on the nature of the seizure, with greater protections generally afforded for more invasive seizures. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968); *see also Camara v. Municipal Court*, 387 U.S. 523, 536–37 (1967) ("[T]here can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails."). In order to conduct "brief investigatory stops of persons or vehicles that fall short of traditional arrest," like the one here, the Fourth Amendment requires only that a police officer have "reasonable suspicion to believe that criminal

activity 'may be afoot.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *see also Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (holding that reasonable suspicion is necessary to justify a traffic stop).

The "reasonable suspicion" standard is a relatively low threshold that tests whether the officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). "Although an officer's reliance on a mere '"hunch"' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274 (citation omitted). Courts must assess "the totality of the circumstances," permitting officers to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc) (quoting *Arvizu*, 534 U.S. at 273).

Here, in his police report, Officer Calupad articulated particularized facts for his belief that Cruz had committed a traffic infraction by failing to stop at a limit line. After Cruz left Rodriguez's residence, Officers Calupad and Reyes followed Cruz as he was traveling westbound on Cleveland Avenue toward a posted stop sign at Van Buren Avenue. Opp., Ex. A at 3. As the officers trailed him, Cruz approached a white painted limit line on the pavement at the intersection of the two streets that demarcated the place for vehicles to stop before proceeding onto Van Buren Avenue. *Id.* According to Officer Calupad, Cruz did not stop at the limit line but instead continued until his front wheels were approximately three feet beyond that line. *Id.* At that point, the front end of Cruz's car was obstructing traffic on Van Buren Avenue. *Id.* Based on these observations, Officer Calupad had reason to conclude that Cruz had violated California Vehicle Code § 22450(a), which provides in relevant part that "[t]he driver of any vehicle approaching a stop sign at the entrance to, or within, an intersection shall stop at a limit line, if marked."

5

Accordingly, Officer Calupad properly turned on his emergency lights and siren to pull Cruz over. Opp., Ex. A at 3.

Cruz's arguments to the contrary do not upset the conclusion that reasonable suspicion supported the officers' traffic stop. Because the officers had reasonable suspicion to justify a stop for a traffic law violation, it does not matter whether the officers used the stop as a pretext to uncover other criminal activity. *See␣Whren v. United States*, 517 U.S. 806, 812–13 (1996); *United States v. King*, 244 F.3d 736, 738 (9th Cir. 2001). Nor does the Court agree with Cruz's purported identification of other deficiencies in the police report. For example, Cruz states that the report does not indicate either where the officers began their pursuit or how far behind Cruz's vehicle the officers were following. Mot. at 4. However, the report provides that the officers "caught up to Cruz in the area of Cleveland and Van Buren Ave." as "Cruz was traveling westbound on Cleveland approaching [the] posted stop sign at Van Buren Ave." Opp., Ex. A at 2–3. Cruz's own declaration admits that he noticed the police car behind him as he was driving in this area. Cruz Decl. ¶ 2. Similarly, although Cruz questions "how the officers were able to observe the front of [his] vehicle if they were behind [his] vehicle," Mot. at 4, he offers no reason to doubt that Officer Calupad would have been able to see the position of Cruz's front tires with respect to the limit line from that vantage point. Cruz's demand for ultra-precise information in the reasonable suspicion inquiry is unavailing. *See Ornelas v. United States*, 517 U.S. 690, 695 (1996) (describing "reasonable suspicion" as a "commonsense, nontechnical conception[]").

Cruz separately challenges Officer Calupad's contention that Cruz did not stop behind the limit line. In his declaration, Cruz for the first time proclaims that "[he] made a complete stop at the stop sign and before the white painted limit line," but because of the orientation of the streets, he could not look for oncoming traffic without inching beyond the limit line. Cruz Decl. ¶¶ 4–6. That description conflicts with a contemporaneous statement made by Cruz during the stop. When Cruz asked Officer Gonzalez why he had been pulled over, Officer Gonzalez replied that Cruz had gone over the limit line. Opp., Ex. A at 25. In response, Cruz did not contest this fact but "made a

6
Case No. 15-CR-00285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ANTONIO CRUZ'S MOTION TO SUPPRESS

spontaneous statement [that] he ha[d] lived in Salinas all of his life and that he went past the limit line because he [wa]s unable to see the traffic on Van Buren off of Cleveland if he [wa]s behind the limit line." *Id.* Cruz did not file a reply, with or without an affidavit, explaining this inconsistency or disputing that he made the statement.[1] Moreover, Cruz's admission that he stopped past the limit line is consistent with Officer Calupad's narrative of events. Armed with the fact that Cruz proceeded beyond the limit line and blocked traffic, Officer Calupad had reasonable suspicion that Cruz committed a traffic infraction.

Unable to locate any factual shortcomings in Officer Calupad's police report, Cruz lastly posits a legal deficiency—namely, that his conduct did not actually violate the law. Mot. at 4–5. Cruz's cited authority, *People v. Overing*, 192 Cal. Rptr. 3d 188 (App. Dep't Super. Ct. 2015), does not support his position. In *Overing*, the Appellate Division of the California Superior Court construed California Vehicle Code § 22450(a) to determine "where a vehicle must stop when there is only a crosswalk." 192 Cal. Rptr. 3d at 193. The court's examination of that issue is largely irrelevant here because the court interpreted a distinct portion of the statutory section and, acknowledging the difference in language, drew a sharp division between cases involving limit lines and those involving crosswalks. *See id.* (contrasting the "considerable latitude . . . allowed as to the stopping point when approaching a crosswalk" with the "strict [requirement] as to a limit line" (citation omitted)). Indeed, the court restated the statute's clear directive that "if there is a limit line," the driver must stop "where the limit line is located." *Id.* at 192. That rule, as applied to Officer Calupad's observed facts, produces the sensible result that Cruz violated the statute by crossing the limit line without stopping. Even if Cruz could subsequently proceed beyond the line to check for traffic, the statute proscribes the failure to first stop at the limit line. Thus, the vehicle

---

[1] Notably, Cruz does not request an evidentiary hearing. A defendant seeking an evidentiary hearing must "allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000), *cert. denied*, 534 U.S. 831 (2001). "A hearing is not required on a motion to suppress if the grounds for suppression consist solely of conclusory allegations of illegality." *United States v. Ramirez-Garcia*, 269 F.3d 945, 947 (9th Cir. 2001).

stop was valid because Officer Calupad's police report supplied sufficient individualized facts to support his belief that Cruz committed a traffic violation.

### B. Search of Cruz's Car and Trunk

Cruz next moves to suppress the evidence seized from the backpack in his trunk. Mot. at 6–10. Fourth Amendment jurisprudence has long viewed vehicles as presenting different safety concerns and privacy expectations than stationary residences. While the U.S. Supreme Court has recognized that individuals have privacy interests in their vehicles, it has found that those interests are due a lesser degree of protection for two reasons: (1) the exigency that accompanies the "ready mobility" of vehicles, and (2) the reduced expectations of privacy associated with "the pervasive regulation of vehicles capable of traveling on the public highways." *Collins v. Virginia*, 138 S. Ct. 1663, 1669–70 (2018) (quoting *California v. Carney*, 471 U.S. 386, 390–91 (1985)).

To account for the altered balance of interests in this context, the U.S. Supreme Court long ago established the automobile exception to the warrant requirement. Under that exception, an officer's search of an automobile can be reasonable without first securing a warrant. *Carroll v. United States*, 267 U.S. 132, 153 (1925). More specifically, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). Nevertheless, the scope of the ensuing warrantless search is limited. That search may extend only to "the places in which there is probable cause to believe that [the object of the search] may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982); *see also California v. Acevedo*, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."). Put another way, where probable cause is limited to one sole compartment or container within the car, the Fourth Amendment forbids the officers from conducting a warrantless search of the remainder. *See Acevedo*, 500 U.S. at 580. The government bears the burden of proving that this exception applies. *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012).

8

Case No. 15-CR-00285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ANTONIO CRUZ'S MOTION TO SUPPRESS

In this case, the government's justification for the entire search is extremely narrow—namely, that Officer Calupad smelled the strong odor of marijuana emanating from the passenger compartment of Cruz's vehicle. Opp. at 8–9. Under the principles detailed above, that fact does not by itself establish probable cause to search Cruz's trunk and backpack. It is true that probable cause "may be supplied by the smell of marijuana." *United States v. Heiden*, 508 F.2d 898, 900 (9th Cir. 1974) (citing *United States v. Barron*, 472 F.2d 1215, 1217 (9th Cir. 1973)); *United States v. Collins*, No. 16-CR-00244-SI, 2018 WL 306696, at *3 (N.D. Cal. Jan. 5, 2018). However, as noted above, probable cause may extend only to certain portions of or containers within a vehicle. *See Ross*, 456 U.S. at 824 ("Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab."). Here, Officer Calupad detected the smell of marijuana from the passenger compartment. While that odor certainly established probable cause to believe that contraband was stored in the passenger compartment, the odor did not raise a fair probability that additional evidence would be uncovered in the trunk, let alone the backpack in the trunk. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (defining "probable cause"); *United States v. Rodgers*, 656 F.3d 1023, 1029 (9th Cir. 2011) (explaining that officers "obtain probable cause [when] the facts indicate that they will find what they are looking for in the place to be searched" (quoting *United States v. Johnson*, 256 F.3d 895, 906 (9th Cir. 2001) (en banc))). Indeed, the government neither identifies any additional fact nor provides any persuasive line of reasoning to validate its inferential leap.[2]

Even Cruz's own admission that there was marijuana in the car was limited to the passenger area. Cruz stated only that he "did in fact have marijuana in the front passenger seat of the vehicle." Opp., Ex. A at 3. In this way, Cruz merely confirmed that the passenger area was

---

[2] The government does not make any argument as to Officer Gonzalez's simultaneous detection of "a very strong odor of marijuana" when he was checking Cruz's vehicle with Officer Calupad. Opp., Ex. A at 25. Although Officer Gonzalez did not say that he detected marijuana coming from only one place within the vehicle, the remaining evidence in the record limits the smell to the passenger compartment. The government has failed to explain the significance of Officer Gonzalez's statement. *See Scott*, 705 F.3d at 416 (holding that the government carries the burden of establishing the applicability of the automobile exception).

the particular place where the offending marijuana was likely to be found. Unsurprisingly, Officer Reyes's subsequent search of the passenger compartment turned up the black box which contained 2.4 grams of concentrated cannabis. *Id.* at 22, 26. Nonetheless, Cruz's statement did not add anything more to the calculus about whether the officers would find evidence in the backpack in his trunk. Moreover, as the Court explains below, Cruz's statement must be suppressed because it was made during a custodial interrogation without the requisite advisement of Cruz's rights.

At bottom, the government's argument rests on an overly broad reading of the case law. The government cites no binding precedent or district court case within this circuit where the odor of marijuana emitting from one defined location within the car was held to supply probable cause to search the entire vehicle and every container therein. *See* Opp. at 8–9 (citing cases). In fact, the government's main authority from the Ninth Circuit appears to cut against the government's position. There, the Ninth Circuit addressed a situation in which an officer legally entered a suspect's car and, once inside, smelled marijuana. *United States v. Solomon*, 528 F.2d 88, 91 (9th Cir. 1975). Contrary to the government's suggestion, the Ninth Circuit did not authorize an automatic search of the entire vehicle; instead, the Ninth Circuit concluded that the odor "gave [the officer] probable cause to search the inside of the car and, *after finding no marijuana there*, the trunk." *Id.* (emphasis added). Rather than respecting that sequencing, the officers here immediately searched both the inside of Cruz's car and the trunk (and all of its contents).

The remaining district court cases cited by the government fare no better. The officers in those cases did not pinpoint a particular place in the car from which the smell arose. *See United States v. Johnson*, 224 F. Supp. 3d 881, 883 (N.D. Cal. 2016); *United States v. Liu*, No. 13-CR-00050-KJM, 2015 WL 163006, at *2 (E.D. Cal. Jan. 7, 2015); *see also United States v. Collins*, 2018 WL 306696, at *1 (analogizing case about marijuana in plain view to cases involving odors of marijuana). Instead, those officers merely detected an odor of marijuana coming from somewhere within the vehicle and thereby had probable cause to search every place in the car where the contraband might be found. *See Johnson*, 224 F. Supp. 3d at 885; *Liu*, 2015 WL

10

Case No. 15-CR-00285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ANTONIO CRUZ'S MOTION TO SUPPRESS

163006, at *3. Moreover, it does not appear that any of those cases involved officers searching containers within the trunk of the vehicles. *See Collins*, 2018 WL 306696, at *3–5; *Johnson*, 224 F. Supp. 3d at 885–87; *Liu*, 2015 WL 163006, at *3. Therefore, these cases are materially distinguishable from the instant case.

The government does identify one out-of-circuit case presenting similar facts to those here. In *United States v. Kelly*, the Fourth Circuit concluded that a drug dog's alert at the driver's door of a vehicle was a factor supporting probable cause to search both the passenger compartment and a backpack in the trunk. 592 F.3d 586, 592 (4th Cir. 2010). However, certain aspects of the case, which are absent here, provide a much sounder basis to find probable cause. First, with respect to the dog sniff, the government in *Kelly* provided evidence to support the inference that the odor of cocaine could have traveled from the trunk to the vehicle's doors. *Id.* The government presents nothing comparable here. Second, in *Kelly*, additional factors supported probable cause. Most prominently, the defendant indicated that there was cocaine in one of his vehicles and the police had earlier found an individual matching the description of the defendant's drug supplier in the defendant's residence. *Id.* at 592–93. Again, the government here restricts its case to Officer Calupad's detection of an odor emanating from the passenger compartment of Cruz's Camry.

The Court does not read the Fourth Circuit to establish a categorical rule that detection of an odor at one location automatically permits a search of any other area of the car. *See id.* at 592 (rejecting defendant's argument that "a dog's alert at one compartment cannot give probable cause to search another compartment simply because the latter is a few feet away"). That rule would conflict with the Fourth Circuit's recognition that, under U.S. Supreme Court precedent, "probable cause to search one compartment or container within a car does not invariably provide probable cause to search the entire vehicle." *Id.* (citing *Acevedo*, 500 U.S. at 580). Indeed, the Fourth Circuit in *Kelly* relied on a previous case expressly rejecting such a categorical rule—in that case, the Fourth Circuit explained that a drug dog's alert at the driver's side of a vehicle would not establish probable cause to search containers in the trunk without an accompanying factual finding

11

Case No. 15-CR-00285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ANTONIO CRUZ'S MOTION TO SUPPRESS

that the alert was sufficiently close to the trunk. *United States v. Carter*, 300 F.3d 415, 422 (4th Cir. 2002). Because the government has not proffered or identified any factual circumstances in the present case warranting such a finding, this Court declines to make one here. As the Fourth Circuit put it, the government's hardline position "overstates the matter," *id.*, and risks opening a gaping hole in the automobile exception's probable cause requirement whenever an officer smells marijuana.

In sum, the government has not carried its burden of showing that the search of the backpack inside Cruz's trunk fits within the automobile exception. With no other asserted basis to justify the warrantless search, the Court concludes that the search was unreasonable under the Fourth Amendment. Accordingly, the Court GRANTS Cruz's motion to suppress the firearms, ammunition, cash, cocaine, marijuana, and digital scale recovered from the backpack.

## C. Interrogation of Cruz

Cruz separately moves to suppress a statement that he made during the traffic stop on the ground that the officers failed to advise him of his rights set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966). Mot. at 5–6. In *Miranda*, the U.S. Supreme Court held that certain warnings must be given before a suspect's statements made during a custodial interrogation can be admitted into evidence. 384 U.S. at 444. *Miranda* protections are triggered "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)). The phrase "in custody" means "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (internal quotation marks and citation omitted). The ultimate question is whether, evaluating all of the circumstances surrounding the interrogation, "a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (internal quotation marks, alteration, and citation omitted).

The parties agree that no officer advised Cruz of his *Miranda* rights before Officer Calupad asked the question about marijuana that elicited Cruz's incriminating response. *See* Cruz Decl. ¶ 16. Instead, the parties dispute whether the circumstances amounted to custodial interrogation necessitating the reading of those rights. *Compare* Mot. at 5–6, *with* Opp. at 9–10. Here, the record compellingly shows that Cruz was subjected to custodial interrogation and, therefore, his *Miranda* rights were violated.

After Cruz pulled over in response to the police car's emergency lights, Officer Calupad immediately ordered Cruz out of the vehicle. Opp., Ex. A at 3. As Cruz recounts in an uncontroverted portion of his declaration, the officers yelled at him to throw his keys out of the car and exit the vehicle with his hands up. Cruz Decl. ¶¶ 13–14. Following the officers' instructions, Cruz then walked backward toward the officers. *Id.* ¶ 14. Once Cruz reached the officers, they handcuffed him and locked him in the back of their police car. *Id.* With Cruz detained, Officers Calupad and Gonzalez checked the vehicle for other passengers but found none. Opp. Ex. A at 3, 25; Cruz Decl. ¶ 15. However, because Officer Calupad detected the odor of marijuana coming from the passenger compartment, he returned to question Cruz. Opp., Ex. A at 3.

As Officer Calupad explains in his police report, he "recontacted Cruz" and Cruz asked "why he had been stopped." *Id.* Officer Calupad answered that Cruz had failed to stop at the limit line. *Id.* After informing Cruz that there was a strong odor of marijuana emanating from the passenger compartment, Officer Calupad asked the question at issue. *Id.* Specifically, Officer Calupad reports that he asked if "[Cruz] had anything illegal or any marijuana in the vehicle." *Id.*; *see also* Cruz Decl. ¶ 15 (stating that Officer Calupad "asked [Cruz] questions related to marijuana"). Cruz responded that he "did in fact have marijuana in the front passenger seat of the vehicle." Opp., Ex. A at 3. The officers then conducted their search of Cruz's car.

A reasonable person in Cruz's shoes would not have felt at liberty to terminate the conversation with Officer Calupad and leave. Indeed, at the time that Officer Calupad inquired about marijuana, Cruz was handcuffed in the back of the officers' police car. Cruz Decl. ¶ 14.

13
Case No. 15-CR-00285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ANTONIO CRUZ'S MOTION TO SUPPRESS

Even if Cruz was not formally under arrest, he was subject to "restraint on [his] freedom of movement of the degree associated with a formal arrest." *Beheler*, 463 U.S. at 1125. In a case where a suspect was "questioned by an [officer] while sitting handcuffed in the back of a police car," the Ninth Circuit had "no trouble" concluding that the suspect was "not free to leave." *United States v. Henley*, 984 F.2d 1040, 1042 (9th Cir. 1993). That holding applies with full force here.

Additional facts reinforce the conclusion. After the officers pulled Cruz over, they yelled commands at Cruz to exit the car and detained him immediately. *See* Cruz Decl. ¶¶ 13–14. When the questioning took place, there were four officers on the scene—Officers Calupad, Gonzalez, Reyes, and Magana. *See* Opp., Ex. A at 3, 25. Although Cruz asked the first question during the encounter, his question pertained to the reason for the stop and came only after Officer Calupad affirmatively "recontacted" Cruz. *Id.* Because Officer Calupad then prefaced his inquiry by telling Cruz that he had smelled marijuana in the car, his follow-up questioning about whether Cruz had "anything illegal or marijuana" in the car, far afield from the stated reason for pulling Cruz over, was accusatory. There can be little doubt that Officer Calupad's questioning amounted to interrogation because such a direct question was "reasonably likely to elicit an incriminating response." *United States v. Zapien*, 861 F.3d 971, 975 (9th Cir. 2017). On these facts, Cruz's statement was made during a custodial interrogation.

The Court is not persuaded by the government's attempt to analogize this situation to the questioning of a motorist in a routine traffic stop. Because a routine traffic stop generally presents a temporary and relatively nonthreatening detention, the U.S. Supreme Court has ruled that an officer usually "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions" without violating *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). Here, the circumstances quickly moved beyond a perfunctory roadside encounter when the officers immediately ordered Cruz out of his vehicle, handcuffed him, and placed him in the back of their police car. The

14

1  government ignores these uncontested details despite the court's obligation to consider the entirety
2  of the circumstances. *See Howes*, 565 U.S. at 509. Because the facts demonstrate a restraint on
3  movement akin to a formal arrest, not a brief traffic stop, Cruz was entitled to *Miranda* warnings,
4  which the officers did not give. Accordingly, the Court GRANTS Cruz's motion to suppress his
5  statement.

### D. Plea Waiver

In a final effort to override the above analysis, the government suggests that Cruz's entire suppression motion is moot. Opp. at 2. The government points to a previous plea agreement in which Cruz pled guilty to certain drug trafficking and firearms violations based on, among other evidence, the evidence recovered from Cruz's car during the traffic stop at issue here. *Id.* at 10–11. In the government's view, Cruz waived his right to challenge the constitutionality of the stop. *Id.* at 11. The Court disagrees.

On July 31, 2012, a federal grand jury issued an indictment charging Cruz with federal drug trafficking and firearms offenses regarding the evidence at issue in this motion. *United States v. Cruz*, No. 12-CR-00591-LHK (N.D. Cal. 2012), ECF No. 14. The parties executed a plea agreement on July 31, 2013. Opp., Ex. B ¶ 20. On September 4, 2013, Cruz pled guilty to conspiracy to distribute controlled substances and possession of a firearm in furtherance of a drug trafficking crime. *Id.* ¶ 1. Under the plea agreement, Cruz agreed that "the items recovered . . . inside a backpack in [his] vehicle at the time of [his] arrest on June 7, 2012 . . . were all instrumentalities or proceeds of the drug trafficking conspiracy" and that "[t]he two firearms recovered from the backpack in [his] car at the time of [his] arrest on June 7, 2012, were possessed by [him] in furtherance of the conspiracy to distribute controlled substances." *Id.* ¶ 2. The critical provision for present purposes reads:

> [Cruz] agree[d] to give up all rights that [he] would have if [he] chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; *to move to suppress evidence or raise any other Fourth or Fifth Amendment claims*;

15
Case No. 15-CR-00285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ANTONIO CRUZ'S MOTION TO SUPPRESS

United States District Court
Northern District of California

to any further discovery from the government; and to pursue any affirmative defenses and present evidence.

*Id.* ¶ 3 (emphasis added). Finally, Cruz waived his right to appeal his conviction or sentence and most rights to collaterally challenge the same. *Id.* ¶¶ 4–5.

In the instant case, the government apparently seeks to introduce the same evidence seized during the June 7, 2012 traffic stop that served as a basis for Cruz's prior prosecution. The government's purpose in introducing that evidence in the instant case is unclear. Cruz was first indicted in the instant case on May 27, 2015, *see* ECF No. 1, over a year and a half after Cruz pled guilty on September 4, 2013 in the prior prosecution. The racketeering charges that are central to the October 28, 2015 Superseding Indictment allege a time period spanning from 2009 to 2011, *see* ECF No. 40 ¶¶ 28, 36, 38, but the traffic stop in dispute did not occur until June 7, 2012. Moreover, it does not appear that the conduct surrounding the June 7, 2012 traffic stop or the evidence collected from the stop form the basis for any substantive charge in the instant case against Cruz. Nevertheless, to the extent that the government seeks to introduce the same evidence to support these newly filed charges, Cruz's plea agreement does not envision waiver of his right to move to suppress this evidence in the instant case.

The Court construes Cruz's plea agreement according to ordinary principles of contract interpretation. *See United States v. Plascencia-Orozco*, 852 F.3d 910, 919 (9th Cir.) ("Because 'plea agreements are contractual in nature,' we measure them 'by contract law standards.'") (citation omitted)), *cert. denied*, 138 S. Ct. 412 (2017). "In construing an agreement, the court must determine what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty." *United States v. Lee*, 725 F.3d 1159, 1166 (9th Cir. 2013) (quoting *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993)). In light of the imbalance in bargaining power and expertise between the parties, "the government ordinarily must bear responsibility for any lack of clarity." *United States v. Speelman*, 431 F.3d 1226, 1229 (9th Cir. 2005) (quoting *De la Fuente*, 8 F.3d at 1338).

Here, the language of Cruz's plea agreement does not preclude him from bringing the motion to suppress in the instant case. Nothing in the agreement concedes that the evidence seized from Cruz's car was lawfully obtained or otherwise speaks to the use of that evidence in future prosecutions. Moreover, the waiver provision focuses on Cruz's rights in the prior prosecution. Indeed, the waiver's prefatory clause states that Cruz "agree[d] to give up all rights that [he] would have *if [he] chose to proceed to trial*." Opp., Ex. B ¶ 3 (emphasis added). Thus, Cruz's waiver of the right "to move to suppress evidence or raise any other Fourth or Fifth Amendment claims" is limited to the prior prosecution. Similarly, many of the other rights that Cruz waived are trial-specific, such as the right "to confront and cross-examine government witnesses," the right "to remain silent or testify," the right "to any further discovery from the government," and the right "to pursue any affirmative defenses and present evidence." The government does not argue that Cruz has also waived those rights in the instant case, and such an interpretation would be absurd. Therefore, the language of the plea agreement does not preclude Cruz's litigation of the instant motion. However, even if the Court were to conclude that the plea agreement language is unclear, any ambiguity would be construed in Cruz's favor. *See Speelman*, 431 F.3d at 1229 ("[T]he government ordinarily must bear responsibility for any lack of clarity."). This is because the government could have drafted the plea agreement more clearly if the government wanted Cruz to give up his right to move to suppress the same evidence in any future prosecution. *See id.*

The government's failure to cite cases addressing the scenario of a subsequent prosecution asserting new charges based on the same facts and offense conduct underscores how rare this situation is. None of the government's selected authorities address the instant scenario. Instead, those cases resolve questions about the extent to which defendants (in collateral proceedings or on direct appeal) may challenge their convictions after pleading guilty. *See, e.g.*, *Tollett v. Henderson*, 411 U.S. 258, 266 (1973) ("[A]fter a criminal defendant pleads guilty, on the advice of counsel, he is not automatically entitled to federal collateral relief on proof that the indicting grand jury was unconstitutionally selected."); *United States v. Lopez-Armenta*, 400 F.3d 1173,

17

Case No. 15-CR-00285-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ANTONIO CRUZ'S MOTION TO SUPPRESS

1175 (9th Cir. 2005) ("[A]n unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects."); *see also Haring v. Prosise*, 462 U.S. 306, 320 (1983) ("It does not follow, however, that a guilty plea is a 'waiver' of antecedent Fourth Amendment claims that may be given effect outside the confines of the criminal proceeding."). Cruz does not seek to appeal or collaterally challenge his prior conviction. Rather, the operative question here is whether the language of Cruz's plea agreement prevents him from filing a motion to suppress in a later-initiated prosecution for a different offense involving the same offense conduct. As the Court has already explained, the language of the plea agreement does not bar such a motion. However, any ambiguity in the language would be construed in Cruz's favor in any event. *Speelman*, 431 F.3d at 1229. Thus, the Court rejects the government's argument that Cruz has waived his right to challenge the constitutional defects related to the traffic stop.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Cruz's motion to suppress. Specifically, the Court GRANTS Cruz's motion to suppress his statement as well as the firearms, ammunition, cash, cocaine, marijuana, and digital scale recovered from the backpack in his trunk but DENIES Cruz's motion to suppress the marijuana recovered from the passenger compartment.

**IT IS SO ORDERED.**

Dated: June 26, 2018

_Lucy H. Koh_
LUCY H. KOH
United States District Judge