UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL CHAVEZ, et al.,<br><br>Defendants. | Case No. 15-CR-00285-LHK<br><br>**ORDER GRANTING GOVERNMENT'S MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 413 |

On June 26, 2018, this Court granted in part and denied in part a motion to suppress filed by Defendant Antonio Cruz ("Cruz"). ECF No. 388. The Court ruled that while Salinas police officers lawfully stopped Cruz's vehicle on June 7, 2012, the officers violated Cruz's constitutional rights when they subsequently searched a backpack in Cruz's trunk without probable cause and when they interrogated Cruz without first advising him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id.* at 4–15. As relevant here, the Court suppressed a statement Cruz made during the interrogation as well as "the firearms, ammunition, cash, cocaine, marijuana, and digital scale recovered from the backpack in his trunk." *Id.* at 18.

On July 26, 2018, the government filed the instant motion requesting reconsideration of the Court's June 26, 2018 order suppressing the evidence seized from the backpack in Cruz's trunk.

ECF No. 413 ("Mot.") at 1. Although the government raises arguments here that could have been raised in opposition to Cruz's motion to suppress, the government contends that failure to grant reconsideration would work a manifest injustice because a firearm found in the backpack in Cruz's trunk was used in two attempted homicides that are part of the conspiracies charged in this case. *Id.* at 7–8. Cruz filed an opposition on August 9, 2018, ECF No. 430 ("Opp."), and the government filed a reply on August 16, 2018, ECF No. 444 ("Reply"). Having considered the submissions of the parties, the record in this case, and the relevant law, the Court GRANTS the government's motion for reconsideration. The Court concludes that suppression of the evidence seized from the backpack in Cruz's trunk is inappropriate based on the government's newly raised theory that the officers would have inevitably searched the backpack and discovered the evidence.

## I. BACKGROUND

This matter arises from a traffic stop that occurred on June 7, 2012 at approximately 5:45 p.m. in Salinas, California. Earlier that same day, around 4:04 p.m., Salinas Police Officers Carlo Calupad and Mario Reyes arrested Joao Rodriguez ("Rodriguez") for possession of marijuana for sales. ECF No. 361-1 ("Police Report") at 2. The police then set up surveillance of Rodriguez's residence to prevent associates from removing evidence before a search warrant could be obtained. *Id.* The police knew that Defendant Cruz, Rodriguez's cousin, lived in the same residence and associated with members of the Northern California Norteño gang. *Id.*

Officer Juan Cruz-Gonzalez drove to Rodriguez's house in an unmarked police vehicle soon after 4:10 p.m. to conduct surveillance. *Id.* at 20. At approximately 5:25 p.m., Officer Cruz-Gonzalez saw Cruz park in the residence's driveway in a black Toyota Camry. *Id.* Officer Cruz-Gonzalez's report states that after Cruz exited the vehicle, he looked both directions and hurried inside the house. *Id.* Almost twenty minutes later, at approximately 5:43 p.m., Cruz reemerged from the house carrying a black backpack over his shoulder. *Id.* at 21. Cruz placed the backpack in the trunk of the Camry and removed a black box from the trunk. *Id.* According to Officer Cruz-Gonzalez, Cruz then entered the driver's side of the Camry, appeared to place the black box on the front passenger seat or in the passenger compartment, and drove away from Rodriguez's

2

house. *Id.* At that point, Officer Cruz-Gonzalez alerted units in the area about what he had witnessed and relayed the make, model, and license plate of Cruz's car. *Id.*

Officers Calupad and Reyes were in a fully marked police cruiser sitting nearby. They caught up with Cruz near the intersection of Cleveland and Van Buren Avenues at approximately 5:45 p.m. *Id.* at 2. Cruz was heading westbound on Cleveland Avenue toward a posted stop sign at Van Buren Avenue. *Id.* at 2–3. Officer Calupad reports that he observed Cruz pull three feet beyond the white painted limit line before coming to a complete stop. *Id.* at 3. Cruz thus blocked cross-traffic on Van Buren Avenue. *Id.* at 3. Shortly thereafter, Officer Calupad turned on the police siren and emergency lights to initiate a traffic stop based on Cruz's failure to stop at a posted stop sign. *Id.*

After Cruz pulled over, the officers immediately ordered him out of the car. *Id.* Cruz's declaration provides that the officers yelled at him to turn off his ignition, throw his keys out of the car, exit the vehicle with his hands raised, and back up toward the officers. ECF No. 350-2 ("Cruz Decl.") ¶¶ 13–14. Once Cruz reached the officers with his back toward them, the officers handcuffed Cruz and put him in the back of their police car. *Id.* ¶ 14.

At some point during this series of events, Officers Gabriel Gonzalez and Gerry Magana arrived on the scene to assist with the traffic stop. Police Report at 25. With Cruz detained in the back of the police car, Officers Calupad and Gonzalez approached Cruz's vehicle to ensure there were no other occupants. *Id.* at 3, 25. Standing near the vehicle, Officer Calupad noticed a strong smell of marijuana emanating from the passenger compartment. *Id.* at 3.

Officer Calupad returned to the police car and "recontacted Cruz." *Id.* Neither Officer Calupad nor any other officer ever advised Cruz of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Cruz Decl. ¶ 16. Cruz asked Officer Calupad why he had been stopped, and Officer Calupad responded that Cruz had failed to stop at the limit line on Cleveland Avenue. Police Report at 3. Officer Calupad then "explained to Cruz that there was a strong odor of marijuana coming from the passenger compartment of [Cruz's] vehicle" and asked whether "[Cruz] had

3
Case No. 15-CR-00285-LHK
ORDER GRANTING GOVERNMENT'S MOTION FOR RECONSIDERATION

anything illegal or marijuana in the vehicle." *Id.* Cruz replied that he had marijuana in the front passenger seat. *Id.*

The officers then conducted a full search of Cruz's vehicle. *Id.* Officer Gonzalez conducted the search of the trunk and its contents. *Id.* at 25. The trunk contained the black backpack that Officer Cruz-Gonzalez had seen Cruz place inside. *Id.* Officer Gonzalez removed the backpack from the trunk and conducted a thorough search of the three zippered compartments. *Id.* at 25–26. Officers seized a loaded .45 caliber Glock handgun, a loaded .45 caliber semi-automatic Colt pistol, a spare magazine loaded with eight rounds of .45 caliber ammunition, additional rounds of .40 and .45 caliber ammunition, a plastic bag containing approximately 256.6 grams of cocaine, plastic containers and bags collectively containing approximately 841.9 grams of marijuana, a digital scale, and over $3,670 in cash. *Id.* at 21–23, 26. Meanwhile, Officers Reyes and Magana searched the front passenger compartment of Cruz's vehicle. *Id.* at 26. In the passenger compartment, Officer Reyes located the small black box, which held 2.4 grams of concentrated cannabis. *Id.* at 22, 26.

On May 23, 2018, Cruz moved to suppress all evidence seized and statements made during the stop and search of his vehicle. *See* ECF No. 350. With regard to the search of his trunk in particular, Cruz argued that Officer Calupad's detection of the odor of marijuana emanating from the passenger compartment was insufficient to justify a search of the entire vehicle. *Id.* at 8. Specifically, Cruz stated that while the smell of marijuana "may have given the officers probable cause to search the passenger compartment of the vehicle or the front passenger seat of the vehicle, it did not give the officers probable cause to search the *entire* vehicle, and certainly not the trunk or closed containers in them." *Id.* Cruz also went on to describe why the officers' other observations did not "establish probable cause to believe that contraband w[ould] be found in" the backpack in Cruz's trunk. *Id.* at 9.

The government filed an opposition on June 6, 2018. ECF No. 361. In arguing for probable cause to search Cruz's trunk, the government did not mention any circumstances other

4
Case No. 15-CR-00285-LHK
ORDER GRANTING GOVERNMENT'S MOTION FOR RECONSIDERATION

than that Officer Calupad smelled marijuana coming from the passenger compartment. Indeed, the government's introductory passage stated:

> [O]fficers had probable cause to search the trunk of Cruz's vehicle. Officers smelled the odor of marijuana coming from the passenger compartment of the vehicle. Under Ninth Circuit precedent, the odor of marijuana emanating from a car provides probable cause to search the vehicle's trunk and containers in the trunk. *See, e.g.*, *United States v. Solomon*, 528 F.2d 88, 91 (9th Cir. 1975).

*Id.* at 2. Similarly, the government's argument section provided:

> Shortly after stopping Cruz, Officer Calupad approached Cruz's vehicle to speak with him and smelled the odor of marijuana emanating from the passenger compartment of the vehicle. Defendant Cruz argues that in smelling the odor of marijuana emanating from the passenger compartment, Officer Calupad had probable cause to search the passenger compartment but lacked probable cause to search the trunk or the backpack inside. Cruz is incorrect. The Ninth Circuit and district courts within this circuit are clear that when the police have probable cause to believe marijuana is contained inside a vehicle—including, when they smell the odor of marijuana emanating from a vehicle—they have probable cause to search the entire vehicle, including containers inside the trunk. Accordingly, the search was lawful under the Fourth Amendment and Cruz's motion to suppress should be denied.

*Id.* at 8–9 (footnote and citations omitted). The government's sole discussion of the other circumstances surrounding the vehicle stop appeared in a section analyzing whether the officers had reasonable suspicion to pull Cruz over. *See id.* at 6–8.

The Court's discussion of the trunk search in the June 26, 2018 order reflected the government's limited arguments for probable cause to search under the automobile exception. *Cf. United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012) ("The burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement is on the government."). As the Court accurately described with reference to the government's opposition, "the government's justification for the entire search is extremely narrow—namely, that Officer Calupad smelled the strong odor of marijuana emanating from the passenger compartment of Cruz's vehicle." ECF No. 388 at 9 (citing ECF No. 361 at 8–9). Applying the well settled rule that a search must be limited to "the places in which there is probable cause to believe that [the object of the search] may be found," *United States v. Ross*, 456 U.S. 798, 824 (1982), the Court

5

Case No. 15-CR-00285-LHK
ORDER GRANTING GOVERNMENT'S MOTION FOR RECONSIDERATION

found that the odor of marijuana emanating from the passenger compartment "did not raise a fair probability that additional evidence would be uncovered in the trunk, let alone the backpack in the trunk." ECF No. 388 at 9. The Court largely distinguished the government's authorities on the ground that the cited cases did not allow searches of an entire vehicle and its containers based on an "odor of marijuana emitting from one defined location within the car." *Id.* at 10. Thus, the Court concluded that "the search was unreasonable under the Fourth Amendment" and granted Cruz's motion to suppress "the firearms, ammunition, cash, cocaine, marijuana, and digital scale recovered from the backpack." *Id.* at 12.

The government now moves the Court to reconsider its suppression ruling as to the evidence obtained from the backpack in Cruz's trunk. *See* Mot. Cruz opposes the government's request. *See* Opp.

## II. DISCUSSION

The government seeks partial reconsideration of the Court's June 26, 2018 order. Mot. at 6 ("The government respectfully requests that the Court reconsider its suppression of evidence seized from the backpack in Cruz's trunk."). The Criminal Local Rules indicate that "[t]he provisions of the Civil Local Rules of the Court shall apply to criminal actions and proceedings, except where they may be inconsistent with these criminal local rules." Crim. L. R. 2-1. Under Civil Local Rule 7-9(a), "[b]efore the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case, any party may make a motion before a Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order on any ground set forth in Civil L. R. 7-9(b)." Thus, as this Court has previously recognized, before a party may seek reconsideration of an interlocutory order, "the Court must grant leave for [the party] to file a motion for reconsideration." *United States v. Feathers*, No. 14-CR-00531-LHK, 2017 WL 783947, at *1 (N.D. Cal. Mar. 1, 2017).

The Court first addresses whether the government has satisfied the requirement for granting leave to file a motion for reconsideration. The Court then discusses whether the

6
Case No. 15-CR-00285-LHK
ORDER GRANTING GOVERNMENT'S MOTION FOR RECONSIDERATION

government has satisfied the standard for a motion for reconsideration. Finally, the Court analyzes the merits of the government's arguments on reconsideration.

### A. Leave to File a Motion for Reconsideration

Although the government's motion is stylized as a motion for reconsideration, *see* Mot., the Court construes the motion as also seeking leave to file a motion for reconsideration. As noted above, to seek reconsideration of an interlocutory order, the government ordinarily must obtain leave on one of the grounds described in Civil Local Rule 7-9(b). *Feathers*, 2017 WL 783947, at *1. Civil Local Rule 7-9(b) allows for reconsideration of an interlocutory order only where the moving party shows:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L. R. 7-9(b).

The government contends that the third subsection is satisfied in the instant case. Reply at 2. Specifically, the government argues that "it was a manifest failure by the Court to" focus on the odor of marijuana without "consider[ing] the totality of the circumstances justifying the officers' search of the backpack." *Id.* However, the government's argument is difficult to square with Civil Local Rule 7-9(b)(3) because that subsection requires that the unconsidered "material facts or dispositive legal arguments" were "presented to the Court before such interlocutory order." As the Court detailed above, the government's opposition to Cruz's motion to suppress confined the probable-cause analysis to Officer Calupad's detection of marijuana. *See* ECF No. 361 at 2, 8–9. That is why the Court's June 26, 2018 order stated that "the government's justification for the entire search is extremely narrow—namely, that Officer Calupad smelled the strong odor of

7
Case No. 15-CR-00285-LHK
ORDER GRANTING GOVERNMENT'S MOTION FOR RECONSIDERATION

marijuana emanating from the passenger compartment of Cruz's vehicle." ECF No. 388 at 9; *see also id.* at 11 ("[T]he government here restricts its case to Officer Calupad's detection of an odor emanating from the passenger compartment of Cruz's Camry.").

Nevertheless, the Court will grant leave for the government to file its motion for reconsideration. As discussed in more detail below, the government's motion newly raises a straightforward, meritorious inevitable discovery argument against suppressing the evidence seized from the backpack in Cruz's trunk. Although this newly raised inevitable discovery argument does not squarely meet the terms of any of the subsections of Civil Local Rule 7-9(b), as the government could have raised the argument previously, the government's need to raise an exception to the exclusionary rule came into sharper focus after the Court suppressed the evidence. Moreover, the Ninth Circuit has "held that reconsideration of a suppression order is permissible even at trial 'if the record reveals matters which indicate that the evidence was lawfully obtained.'" *United States v. Buffington*, 815 F.2d 1292, 1298 (9th Cir. 1987) (quoting *United States v. Rabb*, 752 F.2d 1320, 1323 (9th Cir. 1984), *cert. denied*, 471 U.S. 1019 (1985)). Ninth Circuit law reflects the U.S. Supreme Court's recognition that "[b]ecause the exclusionary rule precludes consideration of reliable, probative evidence, it imposes significant costs: It undeniably detracts from the truthfinding process and allows many who would otherwise be incarcerated to escape the consequences of their actions." *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 364 (1998). Relatedly, the Ninth Circuit has approved "the propriety, for reasons of judicial economy, of a district judge's reconsideration of a suppression order." *Buffington*, 815 F.2d at 1298. The Court notes that the *Feathers* decision cited by Cruz did not involve a suppression ruling. In these circumstances, the Court finds that leave is appropriate. In so doing, the Court notes that a district court's authority to reconsider a suppression ruling falls "within its sound judicial discretion." *United States v. Raddatz*, 447 U.S. 667, 678 (1980).

**B.     Motion for Reconsideration**

Next, the Court must consider whether the government has presented circumstances sufficient to warrant reconsideration of the Court's previous order. "[M]otions for reconsideration

in criminal cases are governed by the rules that govern equivalent motions in civil proceedings." *United States v. Mendez*, 2008 WL 2561962, at *2 (C.D. Cal. June 25, 2008). In ruling on motions for reconsideration in criminal cases, courts have relied on the standards governing Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure. *See United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D. Cal. 2005) (collecting cases), *rev'd on other grounds*, 474 F.3d 1150 (9th Cir. 2007). This Court has held that Rule 60(b) applies when a party files its motion for reconsideration before the entry of a judgment. *Feathers*, 2017 WL 783947, at *2.

Under Rule 60(b), the court may grant reconsideration based on: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered before the court's decision; (3) fraud by the adverse party; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief. Fed. R. Civ. P. 60(b). The government's motion in the instant case impliedly invokes Rule 60(b)(6), a "catchall provision" that applies only when the reason for granting relief is not covered by any of the other reasons set forth in Rule 60. *United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005), *overruled on other grounds by United States v. Washington*, 593 F.3d 790 (9th Cir. 2010) (en banc). Rule 60(b)(6) has been "used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008) (quoting *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1103 (9th Cir. 2006)).

Here, the Court agrees with the government that reconsideration should be granted because "exceptional circumstances" are present and a "manifest injustice" would otherwise occur. Mot. at 8; Reply at 3–4. Cruz and his three remaining co-defendants are charged with three overarching conspiracies in the Superseding Indictment: (1) racketeering conspiracy (Count 1); (2) conspiracy to commit murder in aid of racketeering (Count 2); and (3) conspiracy to commit assault with a dangerous weapon in aid of racketeering (Count 3). ECF No. 40 ¶¶ 27–38. Additionally, Cruz is charged with conspiracy to commit robbery under the Hobbs Act (Count 5); conspiracy to commit

9
Case No. 15-CR-00285-LHK
ORDER GRANTING GOVERNMENT'S MOTION FOR RECONSIDERATION

armed bank robbery (Count 6); multiple murders (Counts 18 and 26); multiple firearms offenses (Counts 19, 20, 25, 27, 28, 61, 64, and 70); multiple Hobbs Act robberies (Counts 24, 60, 63, and 69); and multiple armed bank robberies (Counts 59, 62, and 68). *Id.* ¶¶ 40–43, 59–62, 67–72, 118–23, 129–31.

According to the government, one of the firearms that was recovered from the backpack in Cruz's trunk is critical to the government's case. Specifically, in the backpack, the officers found a loaded .45 caliber Glock handgun, which the officers suspected had been used in two attempted murders in July 2010. Mot. at 5. A senior criminalist at the California Department of Justice, Bureau of Forensic Services performed a forensic examination of the handgun and determined that the handgun had fired bullet casings recovered at two attempted homicides in Salinas in July 2010, one on July 12, 2010 and the other on July 18, 2010. *See* ECF Nos. 413-1, 413-2. The government explains that it "intends to introduce evidence that Cruz and/or his co-conspirators committed these two attempted murders and that the attempted murders constitute overt acts committed in furtherance of the" conspiracies charged in the instant case. Mot. at 5. The government also states that "[t]he fact that police seized the .45 caliber Glock from Cruz's backpack in June 2012 is independent evidence to corroborate cooperating witness testimony that Cruz and/or his co-conspirators participated in the two attempted homicides." *Id.* at 1.

The exclusion of evidence, especially evidence central to the government's case, implicates important societal interests. As the U.S. Supreme Court has recognized, "[b]ecause the exclusionary rule precludes consideration of reliable, probative evidence, it imposes significant costs: It undeniably detracts from the truthfinding process and allows many who would otherwise be incarcerated to escape the consequences of their actions." *Scott*, 524 U.S. at 364. These concerns are particularly heightened in this case because, as discussed below, the government has identified a straightforward doctrinal reason not to suppress the evidence seized from the backpack in Cruz's trunk. Although the government could have made this inevitable discovery argument earlier, the need to make the argument became clearer after the Court granted Cruz's motion to suppress the relevant evidence. Moreover, the Ninth Circuit has "held that reconsideration of a

10

Case No. 15-CR-00285-LHK
ORDER GRANTING GOVERNMENT'S MOTION FOR RECONSIDERATION

suppression order is permissible even at trial 'if the record reveals matters which indicate that the evidence was lawfully obtained.'" *Buffington*, 815 F.2d at 1298 (quoting *United States v. Rabb*, 752 F.2d at 1323).

Cruz asserts that he will suffer prejudice if reconsideration is granted because his "counsel has been preparing for trial with the understanding that the suppressed evidence would not be used." Opp. at 4. In particular, Cruz states that "in reliance of [sic] this Court's Order suppressing the evidence (specifically the firearms), [he] did not file a *Daubert* motion challenging the government's ballistics/tool marks experts." *Id.* at 5. As a preliminary matter, the Court notes that the government appears to have acted diligently, and Cruz does not suggest otherwise. This Court issued its suppression ruling on June 26, 2018. ECF No. 388. The government filed its motion for reconsideration thirty days later, on July 26, 2018. *See* Mot.; *United States v. Jones*, 608 F.2d 386, 390 (9th Cir. 1979) (stating that although "[n]o specific rule governs the timeliness of a motion for reconsideration," a motion for reconsideration of a suppression ruling is timely if filed before the 30-day deadline to appeal the suppression ruling).

In any event, the Court finds that the remainder of the pre-trial and trial schedule leaves ample time for trial preparation. Cruz still stands to receive significant pieces of information from the government over the coming weeks. On September 12, 2018, the government will disclose its exhibit and witness lists without insider information, supplement its expert gang disclosures, and provide notice of any uncharged act that the government will seek to admit in evidence in its case in chief at trial. ECF No. 468 at 3. On September 19, 2018, the government will identify overt acts in the Superseding Indictment that the government intends to prove up in the case. *Id.* On October 8, 2018, the government will disclose its exhibit and witness lists with insider information. *Id.* Finally, although the government already provided unredacted police reports and other materials as well as *Jencks*, *Brady*, and *Giglio* information for non-insider witnesses on August 8, 2018, the government will provide the same materials and information for insider witnesses on October 8, 2018. *Id.* at 3–4.

11

Case No. 15-CR-00285-LHK
ORDER GRANTING GOVERNMENT'S MOTION FOR RECONSIDERATION

Moreover, Cruz will be able to engage in important motions practice with adequate time to prepare. In particular, Cruz's motions in limine and other dispositive/pre-trial motions are not due until October 10, 2018. *Id.* at 4. The pre-trial conference will take place over a month later, on November 15, 2018, after the government files oppositions on October 24, 2018 and Cruz files replies on October 31, 2018. *Id.* Although it is true that the deadline to file *Daubert* motions expired on August 1, 2018, *id.* at 2, the Court will allow Cruz to challenge the government's three firearms/toolmark/ballistics experts in his motions in limine. Again, Cruz has over a month—until October 10, 2018—to prepare and file these motions. Finally, Cruz's trial is set to begin on December 10, 2018. *Id.* at 5.

In light of all of these circumstances, the government has shown the "extraordinary circumstances" necessary to warrant relief under Rule 60(b)(6). Accordingly, the Court GRANTS the government's motion for reconsideration.

**C.     Merits Arguments on Reconsideration**

Having found that reconsideration is warranted, the Court now turns to the merits of the government's arguments on reconsideration. As noted above, the Court's June 26, 2018 order concluded that, while the fact that Officer Calupad "detected the smell of marijuana from the passenger compartment . . . certainly established probable cause to believe that contraband was stored in the passenger compartment, the odor did not raise a fair probability that additional evidence would be uncovered in the trunk, let alone the backpack in the trunk." ECF No. 388 at 9. The Court adheres to that holding here. The Court applied the well-established principle that the scope of a warrantless search pursuant to the automobile exception may extend only to "the places in which there is probable cause to believe that [the object of the search] may be found." *Ross*, 456 U.S. at 824; *see also California v. Acevedo,* 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."). Like the government's previous batch of cases, the government's newly raised authorities are distinguishable because the officers there had probable

cause to search the entire vehicle and could thereby "search every place in the car where the contraband might be found." ECF No. 388 at 10; *see* Mot. at 14–16 (citing cases).

Nevertheless, even though the officers violated Cruz's Fourth Amendment rights by performing a warrantless search of his trunk based solely on the smell of marijuana emanating from the passenger compartment, suppression is not warranted under an exception to the exclusionary rule—namely, the inevitable discovery doctrine. Mot. at 20–23. The inevitable discovery doctrine recognizes that the exclusionary rule is meant to "put[] the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." *Nix v. Williams*, 467 U.S. 431, 443 (1984). Thus, the inevitable discovery doctrine "allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016). In other words, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means[,] then the deterrence rationale has so little basis that the evidence should be received." *Nix*, 467 U.S. at 444.

The government has made that showing in the instant case. Importantly, this Court has already concluded that the sequence of events that resulted in the seizure of the black box, which contained 2.4 grams of concentrated cannabis, from the passenger compartment was lawful. First, the Court found that "the vehicle stop [of Cruz's car] was valid because Officer Calupad's police report supplied sufficient individualized facts to support his belief that Cruz committed a traffic violation." ECF No. 388 at 7–8. Second, the Court held that Officer Calupad's detection of the odor of marijuana coming from the passenger compartment "established probable cause to believe that contraband was stored in the passenger compartment." *Id.* at 9. Thus, the Court denied Cruz's motion to suppress "the marijuana recovered from the passenger compartment." *Id.* at 18. Even without the unlawful search of Cruz's trunk, the officers' lawful search and seizure of 2.4 grams of concentrated cannabis from Cruz's passenger compartment would inevitably have led to the discovery by lawful means of the items in the backpack in Cruz's trunk.

In particular, the officers' lawful discovery of 2.4 grams of concentrated cannabis in Cruz's passenger compartment would have supplied a valid basis to effectuate Cruz's arrest. *See* ECF No. 413-3 ("Calupad Decl.") ¶ 10. At the time of the June 7, 2012 vehicle stop, California law provided that "[e]xcept as authorized by law, every person who possesses any concentrated cannabis shall be punished by imprisonment . . . or by fine." Cal. Health & Safety Code § 11357(a) (2012). The officers had probable cause to believe that Cruz possessed 2.4 grams of concentrated cannabis in his car in violation of the California statute, and Officer Calupad testifies that he would have arrested Cruz for that reason. Calupad Decl. ¶ 10.

With Cruz under arrest, the officers would have followed Salinas Police Department policy and impounded Cruz's vehicle. *Id.* ¶ 11. Under the community caretaker doctrine, police officers may impound "any vehicle which may impede traffic, threaten public safety, or be subject to vandalism." *United States v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005). Section 510.2.3 of the Salinas Police Department Policy Manual called for impoundment in precisely those circumstances: "Whenever a person in charge or in control of a vehicle is arrested, it is the policy of this Department to provide reasonable safekeeping by storing the arrestee's vehicle . . . when the community caretaker doctrine would reasonably suggest that the vehicle should be stored (e.g., traffic hazard, high crime area)." Calupad Decl., Ex. A at 328–29. The officers were justified in impounding the vehicle as both a traffic hazard and a target for vandalism. Specifically, Cruz's Camry "was parked in the main roadway entrance of a residential trailer park where it blocked traffic and constituted a hazard to other motorists using the trailer park." Calupad Decl. ¶ 15. Similarly, the officers believed the area to be a high-crime area and that Cruz's vehicle would therefore be "an easy target for theft or vandalism." *Id.* ¶ 14. Impoundment was warranted because the driver of the vehicle, Cruz, was arrested and no one else was present at the scene to move the car. *Id.*

After impounding Cruz's car, officers would have conducted a routine inventory search of the backpack in the trunk pursuant to Salinas Police Department policy. *Id.* ¶ 16. "Once a vehicle has been legally impounded, the police may conduct an inventory search, as long as it conforms to

the standard procedures of the local police department." *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). Here, section 510.4 of the Salinas Police Department Policy Manual provided that "[p]roperty in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form." Calupad Decl., Ex. B at 331. Under that section, an inventory search would "include[] the trunk and any compartments or containers, even if closed and/or locked." *Id.* As the manual explained, "[t]hese inventory procedures are for the purpose of protecting an owner's property while in police custody, to provide for the safety of officers, and to protect the Department against fraudulent claims of lost, stolen, or damaged property." *Id.* Both U.S. Supreme Court and Ninth Circuit case law have accepted those interests as justifications for inventory searches. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976); *United States v. Caseres*, 533 F.3d 1064, 1074 (9th Cir. 2008). Therefore, the officers would have permissibly conducted a routine inventory search of the backpack in Cruz's trunk and discovered the items contained inside. Calupad Decl. ¶¶ 19–20.

On multiple occasions, the Ninth Circuit has concluded that illegally acquired evidence should not be suppressed where that evidence would have been inevitably discovered through a routine inventory search. *See, e.g.*, *United States v. Castaneda*, No. 16-10525, 2018 WL 2296164, at *1 (9th Cir. May 21, 2018) ("The district court did not err in determining that the firearm, ammunition, and other contents of [the defendant's] backpack were admissible under the inevitable discovery doctrine pursuant to an inventory search."); *United States v. Ruckes*, 586 F.3d 713, 718–19 (9th Cir. 2009) ("[T]he deterrent rationale for the exclusionary rule is not applicable where the evidence would have ultimately been discovered during a police inventory of the contents of [the defendant's] car."); *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986) ("The government met its burden here and properly showed that the cocaine would have been discovered through a lawful inventory procedure.").

Cruz's cited authority supports, rather than undermines, this conclusion. In *United States v. Boatwright*, the Ninth Circuit rejected the notion that the inevitable discovery doctrine requires an alternate line of investigation. 822 F.2d 862, 864 (9th Cir. 1987). Nevertheless, "the fact or

15

Case No. 15-CR-00285-LHK
ORDER GRANTING GOVERNMENT'S MOTION FOR RECONSIDERATION

likelihood that makes the discovery inevitable [must] arise from circumstances other than those disclosed by the illegal search itself." *Id.* at 864–65. The officers in that case failed that test because there was "nothing outside the unlawful search itself that point[ed] to the inevitable discovery of weapons in control of this defendant." *Id.* at 865. Here, in contrast, the inevitable discovery is based on undisputed historical facts regarding the Salinas Police Department's standard inventory procedure that are wholly independent of the officers' unlawful search. The Ninth Circuit in *Boatwright* explicitly distinguished the situation where "a search would have occurred as a matter of routine procedure." *Id.* The instant case fits that description, and the government has adequately proven that, had the illegal search of Cruz's trunk not occurred, the officers would have legally discovered the evidence in the backpack during a routine inventory search.

Based on the government's newly raised inevitable discovery argument, the Court reconsiders the portion of its June 26, 2018 order suppressing the evidence recovered from the backpack in Cruz's trunk and concludes that suppression of this evidence is not warranted. The Court does not reconsider or modify any other portion of the June 26, 2018 order. Thus, the Court grants Cruz's motion to suppress his statement made during the stop, but denies Cruz's motion to suppress the marijuana recovered from the passenger compartment and the firearms, ammunition, cash, cocaine, marijuana, and digital scale recovered from the backpack in his trunk.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS the government's motion for reconsideration of the June 26, 2018 order suppressing the evidence recovered from the backpack in Cruz's trunk. In summary, the Court's rulings on Cruz's motion to suppress are as follows: the Court grants Cruz's motion to suppress his statement made during the stop, but denies Cruz's motion to suppress the marijuana recovered from the passenger compartment and the firearms, ammunition, cash, cocaine, marijuana, and digital scale recovered from the backpack in his trunk.

**IT IS SO ORDERED.**

Dated: September 4, 2018

_____
LUCY H. KOH
United States District Judge